UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tyrone Lee,                                                          Case No. 3:23-cv-2072

        Plaintiff,

   v.                                                                MEMORANDUM OPINION
                                                    AND ORDER

Dana Incorporated,

        Defendant.


## I. INTRODUCTION

Defendant Dana Incorporated has filed a motion to dismiss Plaintiff Tyrone Lee's First Amended Complaint. (Doc. No. 9). Lee filed a brief in opposition. (Doc. No. 10). Dana filed a brief in reply. (Doc. No. 11). For the reasons stated below, I deny Dana's motion.

## II. BACKGROUND

Dana is a global manufacturer of drive train system components. (Doc. No. 7 at 3). Lee worked as a Press Operator at Dana's St. Clair, Michigan manufacturing plant from August 2022 to February 7, 2023, first as a temporary employee placed by a staffing agency and then as a permanent employee. (*Id.*). Lee alleges he consistently worked between 60 and 72 hours per week. (*Id.* at 4). Lee asserts Dana employed other, similarly situated permanent and temporary manufacturing employees at its plants in the United States. (*Id.*).

Lee alleges he and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times and were not paid for all the time they worked. (*Id.*). Specifically, he contends he and others were not paid for time spent changing into and out of personal protective equipment ("PPE"), retrieving and returning tools and other job

equipment, and walking to and from their assigned area of the manufacturing floor. (*Id.*). He says it took him and other similar employees at least 20 minutes to complete these tasks pre-shift and at least another 20 minutes to complete these tasks post-shift. (*Id.* at 4-5).

Lee alleges the personal protective equipment, which included steel-toe boots, gloves, safety glasses, sleeves, and ear protection, was necessary to protect him and other similar employees from head, hand, foot, eye, ear, and other bodily injuries. (*Id.* at 5). He asserts Dana required employees to wear this equipment while working and also required them to put it on and take it off while at work. (*Id.* at 5-6). Similarly, Lee contends manufacturing employees at Dana retrieved and replaced tools and other equipment necessary for their jobs, including squares, wrenches, hammers, and die setters. (*Id.* at 6). Lee asserts he and other similar employees spent time walking from the area where they changed into their PPE and gathered their tools to their worksite, and vice versa. (*Id.* at 7, 8). He also says he and others were not paid for time spent attending safety meetings. (*Id.* at 4-5). In addition, Lee alleges he and other similar employees were not paid for any manufacturing work they were required to perform before their scheduled start time or after their scheduled stop time. (*Id.* at 7).

Lee asserts Dana's failure to compensate manufacturing employees for these activities also resulted in a failure to properly compensate these employees for all the overtime they worked. (*Id.* at 9). He says this was compounded by Dana's failure to keep accurate records, and that such failures were willful. (*Id.* at 9-10).

In all, Lee asserts Dana willfully failed to pay manufacturing employees for the following categories of tasks: (1) changing into PPE before the scheduled start time, (2) retrieval of tools and other similar equipment before the scheduled start time, (3) walking to the worksite after changing into PPE before the scheduled start time, (4) attending safety meetings, (5) manufacturing work performed prior to the scheduled start time, (6) manufacturing work performed after the scheduled

2

stop time, (7) walking from the worksite to the area where employees changed out of their PPE after the scheduled stop time, and (8) changing out of PPE after the scheduled stop time. Lee wants to bring this lawsuit as a collective action under the Fair Labor Standards Act. (*Id.* at 11). He seeks to represent the following class: "All current and former non-exempt manufacturing employees of Dana Incorporated, who worked at one or more of its plants in the United States at any time between 3 years prior to the filing of this suit and the date of final judgment in this matter." (*Id.*). He states this class consists of more than 1,000 people. (*Id.*).

### III. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### IV. ANALYSIS

Dana seeks to dismiss Lee's entire complaint. (*See* Doc. No. 9 at 21; Doc. No. 11 at 10). But its briefing does not address all the claims contained in the first amended complaint. Dana does not argue that Lee's allegations about Dana's failure to pay for time spent performing manufacturing work before and after the scheduled stop time, time spent attending safety meetings, or time spent retrieving tools and similar equipment before the scheduled start time fail to state a claim for FLSA violations. (*See* Doc. Nos. 9 & 11). So, I note at the outset that I will not dismiss claims brought by Lee based on those allegations because Dana does not argue those allegations fail to state a claim. I will address the arguments Dana does make: (1) the Portal-to-Portal Act bars parts of Lee's claims, and (2) some of Lee's claims fail because the first amended complaint contains conclusory legal allegations. (*See* Doc. Nos. 9 & 11).

#### A. Portal-to-Portal Act

Relying on 29 U.S.C. § 254, Dana first argues that time spent changing into and out of PPE (referred to by the parties and the case law as "donning" and "doffing" such equipment) is not

4

compensable as a matter of law. (*See* Doc. No. 9 at 14; Doc. No. 11 at 5). Lee disagrees. (*See* Doc. No. 10 at 15).

This argument implicates the interplay between the FLSA and the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq*. The FLSA requires a qualifying employer to compensate its employees for "each hour worked in excess of 40 hours in each workweek." *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014); *see* 29 U.S.C. § 207. The Portal-to-Portal Act "exempt[s] employers from liability" under the FLSA "for . . . two categories of work-related activities:" walking, riding or traveling to and from the place where an employee performs their "principal activity or activities," and activities which are "preliminary to or postliminary to" those principal activities. *Id.* (quoting 29 U.S.C. § 254(a)) (internal quotation marks omitted). Other than these "express exceptions," the Portal-to-Portal Act does not limit the definition of "work" under the FLSA. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005). So, under the FLSA and the Portal-to-Portal Act, an employer must compensate an employee for time spent performing that employee's "principal activity or activities."

The term "principal activity or activities" includes "all activities which are an integral and indispensable part of the principal activities." *IBP, Inc.*, 546 U.S. at 29-30 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252–53 (1956)) (internal quotation marks omitted). In turn, an activity is "integral and indispensable" to an employee's principal activities "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Solutions, Inc.*, 547 U.S. at 33. This inquiry focuses on the relationship between the activity in question and the "direct or productive labor for which the worker is primarily paid." *Mitchell v. King Packing Co.*, 350 U.S. 260, 260 (1956).

In *Mitchell*, for example, the Supreme Court held that the time meatpacking workers spent sharpening the knives they used to do their work was compensable because "a dull knife would slow down production," would affect the "appearance" and "quality" of the meat products, and would

"cause waste and make for accidents." 350 U.S. at 262. Similarly, in *Steiner*—decided the same day as *Mitchell*—the Court held that changing into and out of work clothes, and showering at the end of the work day, was compensable where those activities were necessary to reduce employees' contact with lead oxide and sulphuric acid in the workplace. 350 U.S. at 250-51; *see also Alvarez*, 546 U.S. at 40 (noting that changing into "certain types of protective gear" is a principal activity because it is "*always* essential if the worker is to do his job") (emphasis in original).

More recently, in *Integrity Staffing*, the Supreme Court held post-shift security screenings were not the "principal activity or activities" of the plaintiffs' Amazon warehouse jobs because the defendant "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment." 547 U.S. at 35. The post-shift security screenings were not "integral and indispensable" to the "employees' duties as warehouse workers" because the screenings "were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" and because the employer "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." *Id.*

With this case law in mind, and drawing reasonable inferences in Lee's favor, he has plausibly alleged changing into and out of PPE is "integral and indispensable" to his manufacturing work.

Lee asserts he and other similar manufacturing employees changed into steel-toed boots, gloves, safety glasses, sleeves, and ear protection before they began their shifts, and that they changed out of this garb after their shift before leaving the workplace. (*See* Doc. No. 7 at 5, 8). Lee alleges this PPE protected him and other similar employees from "head, hand, foot, eye, ear, and other bodily injuries" and that Dana's manufacturing employees "cannot dispense with donning personal protective equipment if they are to perform their manufacturing work in a safe and efficient

6

environment." (*Id.* at 5-6). He further alleges Dana "required Plaintiff and other similarly situated manufacturing employees to wear the personal protective equipment, required them to put it on and take it off at work so that it was maintained in a safe, sanitary, and reliable condition, and did not want them to take it home." He also alleges these tasks—in combination with other pre-shift activity like attending safety meetings, walking to an assigned worksite, and retrieving tools—took "upwards of approximately 20 minutes or more." (*Id.*).

*Steiner* and *Mitchell* teach that protective gear required by an employer in order to prevent workplace injuries is "integral" to an employee's job where the regular conditions of the workplace make the risk of injury an obstacle to the safe and efficient performance of an employee's job duties. *See Steiner*, 350 U.S. at 256 (holding that changing into and out of work clothing to prevent serious workplace injuries caused by regular exposure to toxins was "integral" to the employees' jobs); *Mitchell*, 350 U.S. at 262 (finding that knife-sharpening was "integral" to the employees' jobs where it improved efficiency and prevented workplace accidents).

Here, Lee alleges Dana requires all employees to wear this PPE while working as a precautionary measure, and he alleges employees must change into and out of this PPE while on the job site. (*See* Doc. No. 7 at 5-6, 8). Because Dana requires this PPE, and because Lee alleges the PPE is necessary to do his manufacturing job safely, he has plausibly pled it is an "intrinsic element" of his job and is thus "integral" to it. *Integrity Staffing, Inc.*, 547 U.S. at 35; *accord Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003) (aff'd *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005)) (donning and doffing "non-unique gear (e.g., hardhats) and unique gear (e.g., Kevlar gloves) alike" is a principal activity where it is "necessary to the performance of the principal work").

Changing into and out of PPE is likewise "indispensable" to Lee's job because, he says, he needs it to avoid manufacturing-related injuries to his head, hands, feet, eyes, and ears while working. *See Steiner*, 350 U.S. at 256. Accepting as true Lee's allegations that the PPE actually

7

prevented serious work-related injuries, wearing these garments and other items prevented costly disruptions to the workday and helped ensure Dana's plants operated in a "safe" and "efficien[t]" manner. *Steiner*, 350 U.S. at 251.

Put differently, Lee has plausibly alleged Dana Inc, could not have "eliminated [changing into and out of PPE] altogether without impairing the employees' ability to complete their work." *Integrity Staffing Solutions, Inc.*, 547 U.S. at 35; *accord Franklin v. Kellogg, Co.*, 619 F.3d 604, 620 (6th Cir. 2010) (changing into an out of a uniform and protective equipment was "integral and indispensable" to the employees' work under 29 U.S.C. § 203(o) where it protected them from physical harm). I conclude Lee has plausibly pled changing into and out of PPE was "integral and indispensable" to his job duties and is thus a compensable "principal activity" under the Portal-to-Portal Act and the FLSA.

Dana resists this conclusion, arguing that even at this early stage of the case, changing into and out of PPE cannot be compensable as a matter of law. It raises two arguments, neither persuasive.

First, relying on *Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), it argues "the mere act of donning or doffing ordinary safety gear such as steel toe boots, safety glasses and ear protection is not an integral part" of Lee's job duties. (Doc. No. 9 at 17-18).

*Gorman* does not control here for several reasons. First, because it is an out-of-circuit case, it carries, at best, persuasive weight. And the Sixth Circuit has already declined to follow *Gorman*'s "narrow[]" interpretation of Supreme Court precedent, which "appear[ed] to be unique" among the Circuits at the time. *Franklin*, 619 F.3d at 619. Instead, following "the broader interpretation of integral and indispensable," the Sixth Circuit held that "donning and doffing the uniform and [safety] equipment is both integral and indispensable" under a provision of the FLSA closely

8

congruent to the provision of the Portal-to-Portal Act Dana cites. *Id.* at 620. Because *Franklin* declined to follow *Gorman*'s approach, I will not either.

Second, *Gorman* was decided before the Supreme Court articulated the current "integral and indispensable" test in *Integrity Staffing*—and at least one district court in this Circuit has concluded that *Integrity Staffing* modified the legal test for "integral and indispensable" by requiring courts to focus on whether the activity in question is necessary for the employee to perform his or her duties. *See Whaley v. Henry Ford Health Sys.*, 172 F. Supp. 3d 994, 1003 (E.D. Mich. 2016). Dana does not address the impact of *Integrity Staffing* on prior case law like *Gorman*. (*See* Doc. No. 9 at 14-17; Doc. No. 11 at 7-8).

Finally, *Gorman* involved materially different facts than those pled in the first amended complaint. *Gorman* addressed the claim of employees at a nuclear power plant that the time spent putting on and taking off a helmet, safety glasses, and steel-toed boots was compensable under the FLSA. *See Gorman*, 488 F.3d at 594. Unlike the allegations in this case, the protective equipment in *Gorman* was not linked to an inherent risk the employees faced in the performance of their job duties—it was prophylactic in a general sense. *See id.* In fact, the court in *Gorman* noted that employees "were compensated for donning and doffing" the specialized gear and dosimeters worn in the nuclear containment area, equipment that allowed employees to perform their jobs free from the risk of radiation poisoning. *Id.* at 593 n.4.

In the manufacturing context, there is a much closer link between the PPE Dana required Lee and other similar workers to wear and the risks attendant operating machinery and completing other manufacturing-related tasks. Because of the risk of injury Lee identifies in the first amended complaint, these tasks may be difficult or impossible to perform in a safe and efficient manner absent protective equipment. (*See* Doc. No. 7 at 5). For these reasons, I decline to rely on *Gorman* and reject Dana's argument that it dictates the outcome in this case.

9

Next, Dana argues that even if changing into and out of PPE is part of Lee's principal activities on the job, "the donning and doffing of ordinary safety equipment" is "*de minimis* and therefore not compensable" as a matter of law.  (Doc. No. 9 at 18).  In support, it cites an unpublished case from the United States District Court for the Middle District of Georgia, *Alford v. Perdue Farms, Inc.*, No. 5:07-CV-87CAR, 2008 WL 879413 (M.D. Ga. Mar. 28, 2008).

Decided at the summary judgment stage, *Alford* held that changing into and out of PPE, which included hair and beard nets, goggles, ear plugs, boots, and bump caps, was not compensable under the Portal-to-Portal Act.  *See id.* at 1.  As an alternative holding, the court in *Alford* stated: "[e]ven if these activities could be characterized as integral and indispensable to Plaintiffs' principal activities, they are de minimis and not entitled to additional compensation." *Id.*  Dana does not explain why an alternative holding an unpublished, out-of-circuit summary judgment opinion has persuasive value in evaluating the allegations in the first amended complaint at the Rule 12 stage, when I am required to take the factual allegations in the complaint as true and draw reasonable inferences in his favor.  *See Erickson*, 551 U.S. at 94.

Moreover, drawing reasonable inferences from the first amended complaint, changing into and out of PPE could have taken at least 40 minutes each day.  (*See* Doc. No. 7 at 4-5) (alleging pre-shift and post-shift activities each took "upwards of approximately 20 minutes or more").  This is a far cry from the 10 minutes per day, or less, that some courts have found to be *de minimis* as a matter of law.  *See, e.g.*, *Hill v. United States*, 751 F.2d 810, 815 (6th Cir. 1984) (citing *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984), which established the test courts use to evaluate whether work time is *de minimis* under the FLSA); *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (observing that an hour to an hour-and-a-half per day was likely not *de minimis* because the "aggregate amount of time is anything but negligible and . . . it occurred regularly").  *See also Perry v. City of New York*, 78 F.4th 502, 532 (2d Cir. 2023) (holding that EMTs' pre-shift work was not *de*

10

*minimis* as a matter of law and noting "[e]ven a handful of minutes on most days adds up to thousands of minutes of required post-shift work for each plaintiff."). Because it is plausible that the time spent changing into and out of PPE is compensable under the FLSA, I reject Dana's arguments.

Having rejected Dana's argument that changing into and out of PPE is not compensable, I likewise reject Dana, Inc.'s argument that walking to and from workstations is not compensable. Dana premises its latter argument on the success of its former, and it makes no argument that walking to and from workstations is not compensable if time spent changing into and out of PPE is compensable. (*See* Doc. No. 9 at 18; Doc. No. 11 at 8).

Moreover, the Supreme Court has held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is [compensable]." *IBP, Inc.*, 546 U.S. at 37. Because Lee has plausibly alleged that changing into and out of PPE is a "principal activity" under the Portal-to-Portal Act, he has likewise plausibly alleged that walking to the worksite after putting on PPE and returning from the worksite before taking off PPE are principal activities.

### B. Pleading Deficiency

Dana also argues I should dismiss the entire first amended complaint because of supposed pleading deficiencies—though it identifies only three sets of allegations it believes do not pass muster under *Iqbal* and *Twombly*. (Doc. No. 9 at 18-20; Doc. No. 11 at 3-5). Lee argues he has satisfied *Iqbal* and *Twombly*'s pleading standard for all his claims. (Doc. No. 10 at 12-15, 23-25).

First, Dana, Inc. takes issue with the following allegation: "in addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages." (Doc. No. 9 at 20; *see* Doc. No. 7 at 11). In Dana Inc's view, this is implausible because Lee "does not allege any facts about the conditions at any other plants, does not

11

even identify the other plants, does not allege any practices at other plants and generally does not offer any facts to support his legal conclusion that others are legally 'similarly situated' to Plaintiff." (Doc. No. 11 at 3). In response, Lee argues he is not required to identify specific similarly situated employees at the pleading stage, and he contends Dana seeks to apply an excessively stringent pleading standard to his collective action claims. (Doc. No. 10 at 24-25).

As a sibling district court in the Sixth Circuit recently explained, "for a court to be justified in dismissing FLSA collective claims from a complaint, it must be impossible to draw a reasonable inference that the named plaintiff and other employees could have 'suffered from a single, FLSA-violating policy.'" *Berner v. PharMerica Logistics Servs., LLC*, 703 F. Supp. 3d 802, 809 (W.D. Ky. 2023) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Dana does not persuasively argue this is the case for the first amended complaint. Instead, it focuses on a single allegation containing legal conclusions and attempts to use that supposedly faulty allegation to undermine all of Lee's collective action claims. But this interpretation is too narrow—the mere presence of legal conclusions in a complaint does not require its dismissal wholesale. Instead, as the Supreme Court has instructed, I focus on the "factual allegations" in the complaint while not considering "pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth." *Iqbal*, 556 U.S. at 678.

Lee's factual allegations are sufficient to render his collective action claims plausible. He contends Dana employed "manufacturing employees," including "equipment operators, technicians, material handlers, and assemblers" at each of its plants in the United States. (Doc. No. 7 at 3). "Manufacturing" means "making from raw materials by hand or by machinery," and it is reasonable to infer from Lee's listing of job categories that the Dana employees in question were all involved in the organized production of machine-made items using a division of labor. *Webster's Third New International Dictionary*, 1378 (Merriam-Webster, Inc. 1986).

12

Lee asserts Dana controlled the conditions of employment for all of these employees, including setting their schedules and rates of pay and maintaining labor policies and practices applicable to these employees. (Doc. No. 7 at 3-4). He further contends all these employees were classified as non-exempt, were all paid an hourly wage, and regularly worked more than 40 hours per week. (*Id.* at 4). Lee alleges Dana had a "common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid worked referenced above (including changing into and out of [any] personal protective equipment, getting tools and equipment, and walking to and from their assigned area of the manufacturing floor) and not compensating them" for that work. (*Id.* at 10).

Altogether, the first amended complaint plausibly alleges "a readily discernible collective of employees"—hourly manufacturing employees who worked at a Dana plant in the United States in the last 3 years. *Berner*, 703 F. Supp. 3d at 810. It further "supports a reasonable inference" that "[s]uch a collective could foreseeably 'suffer from a single, FLSA-violating policy:'" compensating those employees only for scheduled shift time and not compensating them for principal activities performed before their start time or after their stop time. *Id.* (quoting *O'Brien*, 575 F.3d at 585). I will not dismiss the collective action claims in the first amended complaint.

Next, Dana takes issue with Lee's allegation that "upon information and belief, Defendant failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated manufacturing employees employed by Defendant." It argues Lee's FLSA claims because this allegation is based on information and belief and is thus implausible. (Doc. No. 9 at 14). Dana does not explain why the supposed inadequacy of this single *allegation* requires the dismissal of any of Lee's *claims*, so the argument fails for this reason alone. (*See id.*)

Dana's "information and belief" argument is also unavailing for a separate reason. Pleading based "on information and belief" is permissible in the Sixth Circuit "under some circumstances."

13

*Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019) (citing *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447 (6th Cir. 2014)). Where a plaintiff lacks personal knowledge of a fact but has "'sufficient data to justify interposing an allegation on a subject,'" or where a plaintiff must "'rely on information furnished by others,'" information-and-belief pleading is permissible. *Starkey*, 573 F. App'x at 447-48 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (3d ed. 2012)).

Here, Lee alleges Dana failed to keep accurate records. (Doc. No. 7 at 9). Drawing reasonable inferences in Lee's favor, Lee, a former employee of Dana, does not currently have access to Dana's employment records—so, for purposes of his complaint, he must "'rely on information furnished by'" Dana itself. *Starkey*, 573 F. App'x at 447-48 (quoting 5 Wright & Miller § 1224). Therefore, even if this allegation is an important component of one of Lee's claims, he may plead these facts "on information and belief." *See DeLanis v. Metro. Gov't of Nashville and Davidson Cnty.*, 697 F. Supp. 3d 748, 764 (M.D. Tenn 2023) (allowing the plaintiff to plead facts on information and belief where "Defendants, but not plaintiffs, would have firsthand knowledge").

Finally, Dana argues Lee's allegations about pre- and post-shift activities are "inherently inconsistent" because "it defies logic that the pre-shift and post shift activities would take the same amount of time given Plaintiff's own allegations that he engaged in more conduct pre-shift." (Doc. No. 9 at 20). Dana cites nothing to support its assertion that it is implausible for two sets of activities to take the same amount of time to complete just because one set of activities involves "more conduct." (*Id.*).

Even setting this aside, at the Rule 12(b)(6) stage, I am required to draw reasonable inferences in Lee's favor. One such inference is that pre-shift and post-shift activities took roughly the same amount of time because employees completed their pre-shift activities at a faster pace than they did their post-shift activities. Another such inference relies on Lee's allegation that these

14

activities took "*upwards* of approximately 20 minutes or more," leaving open the possibility that pre-shift activities took longer than post-shift activities. (Doc. No. 7 at 5) (emphasis added). With these inferences in mind, the allegations to which Dana objects do not "def[y] logic." (Doc. No. 9 at 20). I reject this argument as well.

## V. CONCLUSION

For the reasons stated above, I deny Dana's motion to dismiss. (Doc. No. 9).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge